CHARLES C. STEELE, RESPONDENT, *v.* ASA B. WARD AND OTHERS, APPELLANTS.

*Evidence — physicians — admissibility of their testimony as to the mental condition of their patient — Code of Civil Procedure, sec. 834 — The wife of an heir at law contesting the probate of a will of real property is interested in the event — she cannot testify as to personal transactions with the deceased — what are personal transactions — Code of Civil Procedure, sec. 829.*

The defendants in this action, heirs at law of the plaintiff's testatrix, contested the validity of her will, upon the grounds of a lack of testamentary capacity and of undue influence. Upon the trial the plaintiff called one Monk, the physician who had attended the deceased in her last sickness, and was allowed to prove by him what was said and done by her, at an interview had by him with her at her house at which the plaintiff was present. The plaintiff was allowed to introduce this testimony to show that the witness "made a test of the memory of the testatrix, then or thereafter, to ascertain her capacity to make a will." The witness having been instructed by the judge to avoid stating any information received by him, which was required to enable him to act as her physician, was allowed to answer the question, what was his impression in that interview as to the condition of the testatrix, whether rational or irrational, as follows : " Her gestures and conversation, language, everything that I could observe, impressed me as coming from a person of ordinary sound mind."

*Held,* that the evidence was not prohibited by section 834 of the Code of Civil Procedure and was properly received. (Per SMITH, P. J.)

The defendants called the wife of one of the contestants to testify to "the actions, conduct and sayings" of the testatrix, on certain occasions when the witness was at her house.

*Held,* that as the deceased left real estate in which the witness would have an inchoate right of dower, if the will were declared void, she was interested in the event of the action, and so disqualified, under section 829 of the Code of Civil Procedure, from testifying as to personal transactions or communications had with the deceased.

But that as the burden of proving the incompetency of the witness rested upon the party objecting, and as it did not appear from the question, nor from the other facts proved upon the trial, that the witness would necessarily be compelled to testify as to a personal transaction or communication with the deceased in order to answer the question, that the Court erred in refusing to allow it to be put. (SMITH, P. J., dissenting.)

APPEAL from an order of the Jefferson County Special Term, denying the appellants' motion for a new trial, founded on the minutes of the trial judge, and from an order remitting the pro-

ceedings to the Surrogate's Court of Jefferson County, directing that court to admit to probate the last will and testament of Lodema Ward, deceased.

The testatrix's estate, consisted of both real and personal property, all of which she devised to Charles C. Steele, the present respondent. The deceased was unmarried; her heirs at law were her surviving brothers and sisters, Asa B. Ward one of the appellants being one. The respondent was named as executor of the will, and when he propounded the same for probate, the heirs at law appeared and resisted the application on the grounds: 1st. That the testatrix did not possess testamentary capacity. 2d. That the execution of the will was procured through undue influence, duress and fraud.

The surrogate refused to admit the will to probate; thereupon the proponent appealed to the General Term of this court, and the decree of the surrogate was reversed, and the issues of fact involved were ordered to be tried at the Jefferson Circuit. The same being settled, they were brought to trial and the verdict of the jury sustained the validity of the will. The questions argued on this appeal relate to the rulings of the trial judge in receiving and rejecting evidence, and are stated in the opinion.

*Wayland F. Ford,* for the appellants.

*Levi H. Brown,* for the respondent.

BARKER, J.;

Upon the trial the contestants called as a witness in their own behalf, Amelia Ward, wife of Asa B. Ward, one of the contestants, and she was sworn and gave some evidence without objection. It was then proposed, by the contestants, to prove by the witness the actions, doings and sayings of the testatrix, done and uttered in her presence, some ten days before the execution of the will, with a view of establishing the want of testamentary capacity on the part of the deceased. This offer was objected to by the proponent on the ground that it was incompetent for this witness to relate personal transactions or communications had between herself and the deceased, as the witness was interested in the event of the suit, as the direct result of the verdict would be, in case the probate of the will was rejected, to vest in her husband, one of the contestants the fee in

part of the real estate devised by the will and secure to the witness an inchoate right of dower in the same lands. This objection was sustained, on the ground that the witness was interested in the event of the suit, and an exception was duly taken.

This ruling presents the question which will be first considered. If the witness was interested in the event of the suit, then she was disqualified to prove by her own evidence personal transactions or communications had between herself and the deceased. (Code of Civil Pro., § 829.) If she was not interested in the event of the suit, then she was a competent witness for and in behalf of her husband upon all the issues, as the common law liability arising out of the fact of coverture is removed by the provision of section 828.

Should the will be denied probate, the husband would become seized in fee of an undivided portion of the land devised, and the witness would be immediately vested with an inchoate right of dower in the same premises. The disqualifying interest of the witness must be in the event of the cause itself and must be a pecuniary one. An interest in the question to be decided, is not sufficient to make a witness incompetent. If the verdict cannot be given in evidence in other actions or proceedings, for or against the witness, then he must be considered as interested in the question only and he is not disqualified.

The interest which will operate to disqualify the witness is stated in 1 Greenleaf on Evidence, as follows:

" The true test of the interest of a witness is, that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. It must be a present, certain and vested interest, and not an interest uncertain, remote or contingent." (Sec. 390).

This general statement of the rule is universally accepted as accurate and safe as a guide in disposing of cases where the question is involved. (*Hobart* v. *Hobart*, 62 N. Y., 83; *Miller* v. *Montgomery*, 78 N. Y., 283.)

In this State it has been frequently adjudicated and must now be regarded as settled, that an inchoate right of dower in lands is a subsisting and valuable claim or interest, possessing a pecuniary value, which is susceptible of estimation, although there could be

no right of enjoyment during the life of the husband, and her estate in the lands of which her husband is seized, is incomplete and not consummated until after his death. This interest is not readily definable and it is difficult to select apt words to express her legal right or the nature of the same. Before the death of her husband she has no estate in the lands, nor anything which she can assign or convey to another, or which can be taken in execution for her debts, nor can she protect her interest from waste or destruction while the same is in the hands of her husband or his alienee. (1 Wash. on Real Estate, 284, 285.)

She may, however, join with her husband and release her inchoate right to his grantee, and by that act bar her right of dower in case she survives her husband.

In view of the more recent decisions, in which the nature, character and value of such an estate has been considered and determined, I am of the opinion that the same is a present certain and vested interest, within the rule which disqualifies a witness on the ground of interest.

In *Simar* v. *Canaday* (53 N. Y., 298) it was held, that as between a wife and any other person than the State or its delegates or agents, exercising the right of eminent domain, an inchoate right of dower in lands is a subsisting and valuable interest, which will be protected and preserved to her, and that she has a right of action to that end.

This was an action at law, prosecuted by the husband and wife, against the defendant to recover damages arising from the fraud of the defendant, in inducing the defendants to convey certain real estate, the wife joining in the deed releasing her inchoate right of dower. It was there held, that she was a proper party to the suit, and if a fraud had been practiced which induced her to release her inchoate right of dower, it did work harm and injury to a right which she had, and she was entitled to recover the damages, which she had sustained, and a verdict in favor of herself and husband was upheld.

*Witthaus* v. *Schack* (24 Hun, 328) was an action by the wife to set aside a release of dower which she had executed, on the ground that she was induced to execute the same by reason of fraud, and it was held that the action could be maintained as the transaction related to and affected a subsisting and valuable right in her favor.

It has been held that a release by a wife, of her inchoate right of dower, by joining with her husband in the conveyance of the same, is a good consideration for setting aside a portion of the consideration money for her separate use, and equity will compel the husband to execute his promise. (*Garlick* v. *Strong*, 3 Paige, 440.)

It was also held in *Doty* v. *Baker* (11 Hun, 222), that the release by the wife of her inchoate right of dower in the lands of which her husband was seized, was a good consideration for and upheld a transfer of property made by her husband for her separate use, and when the same was no more than a just and fair compensation, the transaction would be upheld as against the creditors of the husband. That the amount of her inchoate right of dower might be determined by a computation under the annuity tables. (See, also, *Denton* v. *Nanny*, 8 Barb., 618; *Matthews* v. *Duryee*, 4 Keyes, 525; *Mills* v. *Van Voorhies*, 20 N. Y., 412.)

Upon the authority of these cases, the witness had a direct interest in the event of the suit, for the reason that if the verdict had been in favor of the parties calling her to the stand, she would have been vested with a present and certain interest in the subject of the controversy. If she should survive her husband, then the record would be legal evidence in her favor, to prove the seizin of her husband in the lands devised and thus defeat any title set up under the will.

Although the witness was interested in the event of the suit, yet she was competent to give any evidence pertinent to the issue, not within the prohibition of the statute, which is limited " to personal transactions or communications between the witness and the deceased person."

The evidence rejected was offered by the contestants, as bearing on the question of the mental capacity of the testatrix, to make a valid will. Before the objection was interposed, the witness had stated that she had an acquaintance of many years standing with the deceased, and was present on an occasion when she saw the deceased in a fit; the witness then made the further statement, that she was at the house of the deceased on another occasion, in October, covering a period of four days, which was some ten days previous to the execution of the will.

Thereupon the following question was propounded to the witness: State Lodemas' actions, conduct and sayings, on the sixteenth, seventeenth, eighteenth and nineteenth of October, being the days when the witness was present at the house of the testatrix.

It was to this question the objection was interposed that the witness was disqualified by the statute, as it called for a personal conversation between the witness and the deceased.

From all that is made to appear by the bill of exceptions, it cannot be said that this inquiry necessarily called for a personal transaction or conversation between the witness and the deceased. The question does necessarily imply that she was at the time mentioned in the presence of the deceased, and from the witness' previous statement it may be inferred that it was at the house of the deceased where the occurrences called for by the question happened. The witness, in legitimate response to this inquiry, could have narrated the actions and conduct of the deceased indicating her mental condition, without necessarily relating anything concerning a personal transaction or communication with the deceased.

The things which the witness saw and observed in the conduct and behavior of the deceased, might come to her knowledge without a personal interview with the deceased and without the testatrix being conscious of her presence in the house. The same may be said concerning the sayings of the deceased, uttered within the hearing of the witness on the same occasions.

We cannot assume that the witness was alone with the deceased at those times, and if such was the fact, a very different question would be presented. If the proponent who interposed the objection knew, or had reason to suppose the fact to be, that these parties were alone or had a personal interview, and an answer to the inquiry would have disclosed a personal transaction or conversation with the deceased, he should have brought out the fact by a preliminary inquiry of the witness, before interposing the objection. The incompetency of witnesses is to be made out by the party alleging the same. (*Cary* v. *White*, 59 N. Y., 336.)

The validity of the exception must be determined as the case appeared at the time the same was interposed. By other provisions of the Code parties to actions and interested persons are made competent witnesses in their own behalf. The special prohibition

contained in section 829 is made an exception to the general rule as to competency.

"The primary intent of the prohibition is very apparent, and is to prevent a surviving party from proving by his own testimony a personal transaction or communication between himself and the deceased person, which but for the prohibition he might do without fear or possibility of contradiction." (*Pinney* v. *Orth et al.*, 88 N. Y., 447–451.)

It has been repeatedly held that the prohibition does not extend to conversations had between the deceased and third persons which were overheard and listened to by the witness. (*Simmons* v. *Sisson*, 26 N. Y., 277; *Cary* v. *White, supra; Heildebrant* v. *Crawford*, 65 N. Y., 111.) If the transaction be one wholly independent of the witness, neither induced by his solicitation or supported by his actions, one with which he in no way interferes or joins, it cannot be one of a personal character as regards him. (*Holcomb* v. *Holcomb*, 20 Hun, 159.) It does not appear by the bill of exceptions, nor is there the least reason for supposing the witness sought, or in any way was instrumental in bringing about the opportunity which enabled her to hear the sayings or witness the behavior of the testatrix.

For the purpose of illustrating the view which we take as to the relation which the witness held to the deceased, as presented by the case now before us; suppose a visitor in an insane asylum should have an opportunity to observe the actions and hear the utterances of an inmate without holding any conversation with him, can there be any doubt as to the competency of such a witness to relate all he may have heard or seen of the "doings or sayings," of the inmate without invading the rule of prohibition as set forth in the statute.

We entertain no doubt, but that under such circumstances, the observer would be a competent witness to testify to the same, although interested in the event of the suit. For the error thus pointed out, a new trial must be granted on the issues.

Asa B. Ward, one of the contestants, was also a competent witness in his own behalf to give evidence as to all matters not brought within the prohibition of the statute. The evidence which he proposed to give as a witness in his own behalf is of the

same general nature and character as that offered to be proved by his wife, the rejection of which we have just considered and found to be erroneous. In the offer made in connection with the production of this witness, there is some reason for saying that the evidence which he proposed to give related to a personal conversation and transaction which he had with the deceased, but as the question is obscure and in doubt, and it is not likely that the question will be presented on another trial, in precisely the same form, we do not give the exception particular consideration, as what we have already said concerning the rejection of the testimony of the witness Amelia Ward, sufficiently indicates the subjects and evidence which do not come within the prohibition of the statute.

New trial granted, with costs to abide the event.

HARDIN, J., concurred.

SMITH, P. J. (dissenting):

The issues in this case related to the testamentary capacity, and freedom from restraint, of Lodema Ward, on the 29th October, 1879, on which day, as is alleged by the respondent, she executed an instrument purporting to be her last will and testament. She was unmarried. At her death, she left real and personal property. The appellants would have been entitled to her property, or a portion of it, as heirs at law and next of kin, if she had died intestate. By her will she gave all her estate to the respondent, who was in no way related to her, and she appointed him sole executor.

At the trial of the issues, the respondent called Sheldon Moak as a witness to testify to the mental condition of the testatrix. He testified that he was a practicing physician; that he attended the deceased during her last sickness, and that on one occasion when he visited her as her physician, he met the respondent at her house. He was then asked to relate what occurred on that occasion, when the three were together, the respondent's counsel stating that he proposed to show that the witness was introduced to Steele by Miss Ward, that they had general conversation about divers matters, and that the witness "made a test of the memory of the testatrix, then or thereafter, to ascertain her capacity to make a will." The trial judge decided to receive the testimony of the

witness, to the extent indicated by the counsel for the proponent as the intended range of the examination. To that ruling the counsel for the contestant's excepted. The witness, after having been cautioned by the judge to avoid stating any information received by him which was necessary to enable him to act as her physician, testified that Miss Ward introduced Mr. Steele as an old friend of hers, and said he had befriended her on different occasions and let her have money when she was in want. The witness stated more conversation of the like tenor. He was then asked by the proponent's counsel to state what was his impression in that interview as to the condition of the testatrix, whether rational or irrational. The counsel for the contestants objected, that the testimony called for was within the prohibition of the statute, evidently referring to section 834 of the Code. The court overruled the objection and the counsel for the contestants excepted. The witness answered: "Her gestures, and conversation, language, everything that I could observe, impressed me as coming from a person of ordinary sound mind." We have stated the facts bearing on the question, thus fully because we think such statement shows very clearly that the information disclosed by the witness was not necessary to enable him to act in his professional capacity. It was such information as any layman would have acquired in the same interview. This feature of the case takes it out of the statute, distinguishes it from *Grattan* v. *Metropolitan Life Insurance Company* (80 N. Y., 281), relied on by the contestant's counsel, and puts it on all fours with the cases of *Edington* v. *The Ætna Life Insurance Company* (77 N. Y., 564), and *Staunton* v. *Parker* (19 Hun, 55). The ruling was not erroneous.

The contestant's counsel offered Amelia Ward, the wife of the contestant, Asa B. Ward, to testify to the "actions, conduct and sayings" of the testratrix, on certain occasions when the witness was at her house in October, 1879. It was objected that the witness was incompetent to testify to personal transactions or communications between herself and the deceased, and the objection was sustained, and the testimony excluded. Section 829 of the Code provides that a "person interested in the event" shall not be examined as a witness "in his own interest," against a

"person deriving his title or interest from, through or under a deceased person, * * * by assignment or otherwise;" concerning a "personal transaction or communication between the witness and the deceased person." That the witness was directly interested in the event, and not in the question merely, seems clear. The success of her husband would immediately and certainly invest her with an inchoate right of dower in the real estate of the deceased.

In *Anstey* v. *Dowsing* (2 Strange, 1253) the defendant was a devisee, subject to an annuity to the wife of one Hailes, for life, for her separate use. The suit involved the validity of the devise, and it was held that the annuitant, although not a party, was directly interested in the result, as her annuity depended on the validity of the devise, and so she was not a competent witness. That case was cited with approbation by Ld. MANSFIED in *Windham* v. *Chetwynd* (1 Burr., 414, 424). In all the cases cited by the contestants' counsel, the witness was interested in the question merely, and not in the event. The proponent is within the statute. Although not an executor in fact, he is seeking to establish by his proceeding a "title or interest" derived by him from the deceased, and that is enough. Can it be doubted that the question called for "personal transactions and communications" between the witness and the deceased within the meaning of those words as used in the statute? It does not appear that any third person was present. The offer was broad enough to include whatever the deceased did and said, including "transactions" and "communications" that passed between them personally. The objection was aimed at proof of such transactions and communications. If the contestants' counsel did not intend to embrace such transactions and communications in his question, he should then have disclosed such intention, or so framed his question as to have excluded testimony of that character. We think the ruling was correct.

The objection that the contestant, Asa B. Ward, was an incompetent witness to give like testimony was properly sustained, he being not only interested in the event, but also a party. As the actions and sayings of the deceased, which the question referred to, were relevant only as evidence tending to show the mental condition of the deceased at the time, and so bore directly upon the issue, the witness was incompetent to testify to them for the reason that

the occurrences called for transpired in the presence of the deceased and the witness alone, and if the deceased had been living her version of what occurred might have contradicted his. The case was within the policy of the statute.

The judgment and order should be affirmed, with costs to the respondent.

Order reversed and new trial ordered, with costs to abide the final award of costs.