In the Matter of the Estate of CECIL ERNST DELAPENHA, Deceased.

Surrogate's Court, New York County, May 31, 1941.

*Edward Fingerman*, for the petitioner.

*Samuel S. Pariser*, for the respondent.

*William J. McArthur*, for the United States Fidelity & Guaranty Company.

FOLEY, S. The petitioner, Mrs. Martha Jane Roberts, seeks in this proceeding, brought pursuant to section 206-a of the Surrogate's Court Act, to compel the delivery of certain personal property upon the ground that it was the subject of a valid gift made by the decedent to her.

In her petition she asserted that her claim extended to certain articles of jewelry and to shares of stock contained in a safe deposit box of the decedent located in New York county. Shortly after his death the box was opened in the presence of an official of the State Tax Department, the administrator, the attorneys and a representative of the safe deposit company. No stock was found in it. The contents consisted merely of certain articles of jewelry which, for the purpose of this proceeding, may be stated to be worth not more than $1,500. The controversy, therefore, has been limited by the revelation of the actual contents.

The decedent for some years prior to his death had resided at a hotel in Chicago, Ill. The petitioner likewise resided there. The gift is claimed to have taken place in that city. The claim is based upon testimony which involves a symbolic delivery of the contents of the safe deposit box by the handing over of the key to it by the decedent to the petitioner.

The surrogate finds upon the evidence that no valid absolute gift has been established as to any of the property.

The witnesses who testified on behalf of the petitioner may be divided into two classes: *First*, alleged eyewitnesses to the delivery of the key, and *second*, those who testified to admissions by the decedent after the occurrence. The testimony of the two witnesses in the first class is substantially similar. The decedent, it is stated, gave the key to the petitioner in his hotel room in Chicago about the middle of December, 1939. He was in good health at the time. He said that it was the key to his vault in New York city and " that he wanted her to have everything in his vault. He also said that the next time he and Mrs. Roberts were in New York, he would go with her to the vault so that he could make all the necessary arrangements for her to get into the vault at any time." He told her likewise that " she was a lucky woman." The petitioner then took the key and kept it in her possession.

The other two witnesses testified to alleged subsequent admissions by the decedent that he had made the delivery of the key to the petitioner and that everything in the box was hers " to do with as she pleased, whenever she pleased." He also stated that he and Mrs. Roberts were planning to go on a cruise to the West Indies. For that purpose they would shortly leave for New York city from where they were to sail, and that when they got to New York they would go to the bank to have the vault changed into Mrs. Roberts' name. There is evidence that the relations of the parties had been affectionate and there is some indication as to

their intention to get married. That event, however, never occurred.

This testimony is wholly insufficient to establish a present absolute gift. It shows at most an intention to make a prospective gift which was never consummated. (*Vincent* v. *Rix*, 248 N. Y. 76; *Farmers' L. & T. Co.* v. *Winthrop*, 238 id. 477; *Matter of Laytin*, 149 Misc. 60.) There " must be a change of dominion and ownership; intention or mere words cannot supply the place of an actual surrender of control and authority over the thing intended to be given." (*Vincent* v. *Rix, supra.*)

Donations may be made in a symbolic manner without the actual physical delivery of the articles or property. Thus certain cases have held that the contents of a safe deposit box may be made the subject of a valid gift by the delivery of the key to it by the donor to the donee. (*Matter of O'Connor*, N. Y. L. J. May 10, 1920, p. 510; affd., 199 App. Div. 959; *Pink* v. *Church*, 60 Hun, 580; affd., 128 N. Y. 634; *Matter of Adler* v *Levene*, 191 App. Div. 40.)

The evidence here, however, is entirely barren of an essential element of the law of gifts — that there must be satisfactory proof of an actual surrender of control and authority by the giver over the thing given. (*Matter of Kelly*, 285 N. Y. 139; *Vincent* v. *Rix, supra; Matter of Van Alstyne*, 207 N. Y. 298; *Matter of Bolin*, 136 id. 177; *Tompkins* v. *Leary*, 134 App. Div. 114.) The evidence must show that the donor intended to divest himself of the possession of his property and " it should be inconsistent with any other intention or purpose." (*Matter of Bolin, supra*, at p. 180.)

The version of the witnesses for the petitioner as to the delivery of the key may be accepted as true and, yet, a completed gift was not effectuated. The decedent himself spoke of the contemplated trip to New York city where the arrangements for the delivery to the petitioner of the contents of the safe deposit box would be made. Finality of surrender was thus reserved by the decedent. The parties did go to New York. Before sailing on the cruise, neither he nor she made any effort to change the form of the lease of the box, which was in the individual name of the decedent. On their return from the cruise there is credible evidence that he called at the bank in this city where the box was located. There is no evidence that he actually visited the safe deposit vault or opened the box. He was unaccompanied by the petitioner on this occasion. In any event she was never made the single tenant or joint tenant of the box or given a right as deputy or attorney in fact to have access to its contents. The record title to it stood unchanged in his name to the time of his death on February 5, 1940.

The delivery necessary to consummate a gift must be as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit. The only delivery relied upon here is constructive and prospective. As a business man of long experience, Mr. Delapenha must have known, if he actually gave the key to Mrs. Roberts, that she would have no right of access to the box by the possession of the key only. The safe deposit company would have required a formal document of transfer or authority to open the box. Moreover, there was abundant opportunity for the decedent to have consummated the gift by taking the jewelry from the box and delivering it to his friend, Mrs. Roberts, if such was his intention.

There are some circumstances in the evidence which tend to throw doubt upon the version of her witnesses, since she had access to his effects after his death and could have secured surreptitious possession of the key at that time.

Finally, there is another fatal defect in the record which precludes any determination in favor of the petitioner. There is no identification of the subjects of the alleged gift nor of the exact contents of the box at the time of the giving of the key in December, 1939. In some respects the facts here are much similar to those in *Matter of Van Alstyne (supra)*. There, a gift of certain notes and trust deeds was claimed. The alleged donor from the time of the alleged donation retained exclusive actual control of the safe deposit box in which they were found at his death. The evidence was even stronger than here because the box was leased in the names of the alleged donor and alleged donee, although it was undisputed that the donee never had actual access to it. In the *Van Alstyne* case *(supra)* the " only asserted symbolical delivery consists in the alleged delivery to the respondent of a duplicate key to the safe deposit box held in their joint names and in which the notes and trust deeds were found in a package * * *." (at p. 309.) There, as here, the box with its contents was in the actual control of the decedent during his life, and the respondent never sought or exercised any actual control over it. The Court of Appeals found against the claimant and held that the gift was not established.

In the pending case there is no proof as to what were the contents of the box in the middle of December, 1939, when the key was delivered to the petitioner. An *inter vivos* gift to be effective must be present and absolute. The thing given must be identified. A gift, unlike a will, is never ambulatory. The definitely ascertained property, passes at the time of the donation. There never can be included within such a gift additions of separate property. Such additions must be made the subject of independent proof and

cannot pass under the words of the prior donation of other property. We are not concerned here with cases which involve increments which are incidental to the nature of the property, such as cash or stock dividends. We are dealing with a situation involving unrelated forms of personal property. Thus the petitioner here never could have justifiably claimed that the articles or securities placed in the box after the date of the alleged gift could be included within it. The subjects of the gift here are not capable of identification. Apparently, from the petitioner's own claims, she believed that it contained a greater number of articles of jewelry, and also the stock, which were not found in it at death. Indeed, there is no proof that there was anything in the box at the time of the alleged gift. The few articles of jewelry found in it may have been placed there by the decedent after the date of the handing over of the key. There was opportunity at least for their placement at the time of his visit to the bank upon his return from the cruise in January, 1940. The situation, therefore, is quite different from those cases in gifts *causa mortis* where the key to the safe deposit box was delivered a few days before death, and the donor, because of his physical condition, was unable to obtain access to it. In such cases the presumption attaches, in the absence of evidence to the contrary, that the articles found in the box immediately after death were there at the time of the symbolic gift. Again, unlike the situation here, the evidence in these cases was sufficient to convince the triers of the facts that a present absolute valid gift had been made. (*Matter of O'Connor, supra; Matter of Adler* v. *Levene, supra; Matter of Sullivan*, 133 Misc. 758.)

If Mrs. Roberts had died first, Mr. Delapenha could well have defeated any claim by her estate that a gift had been made. Because of his retention of control of the box and its contents, there can be no uncertainty in such a case as to who is the owner. If gifts of the kind were sustained on flimsy and unconvincing testimony, too much latitude and opportunity for fraud would exist. The characterization of a court of New Jersey upon such a situation is extremely pertinent. It stated: " When it is remembered that these gifts come into question only after death has closed the lips of the donor; that there is no legal limit to the amount which may be disposed of by means of them; that millions of dollars' worth of property is locked up in vaults the keys of which are carried in the owners' pockets, and that, under the rule applied in those cases, such wealth may be transferred from the dying owner to his attendant, provided the latter will take the key and swear that it was delivered to him by the deceased for the purpose of giving him the contents of the vault, the dangerous character of

the rule becomes conspicuous. Around every other disposition of the property of the dead, the legislative power has thrown safeguards against fraud and perjury. Around this mode the requirement of actual delivery is the only substantial protection, and the courts should not weaken it by permitting the substitution of convenient and easily proven devices." (*Keepers* v. *Fidelity Title & Deposit Co.*, 56 N. J. L. 302, 308; 28 A. 585; cited in *Tompkins* v. *Leary*, 134 App. Div. 114.)

The proceeding is dismissed upon the merits.

Submit decree on notice determining that the articles of jewelry found in the safe deposit box constitute assets of the estate and are not the property of the petitioner.